IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, a Nebraska Fraternal Benefit Society;<br><br>Plaintiff,<br><br>vs.<br><br>JOHN BRAD LIGON, and SCOTTIE D. CLARK,<br><br>Defendants. | 8:18CV218<br><br>**ORDER** |

This matter is before the court on a motion for an order overruling the defendants' objections and permitting Plaintiff Woodmen of the World Life Insurance Society ("Woodmen") to serve a subpoena duces tecum on First Heartland Capital, Inc. ("First Heartland"). ([Filing No. 46](#)). For the following reasons, the motion will be granted in part and denied in part.

BACKGROUND

Defendants, John Ligon ("Ligon") and Scottie Clark ("Clark"), sold life insurance and annuity products pursuant to Recruiting Sales Manager Contracts ("RSM" Contracts) with Plaintiff. In early 2018, both Defendants terminated their employment relationships with Plaintiff and joined First Heartland.

On May 18, 2018, Woodmen filed the above-captioned action seeking injunctive relief.[1] Woodmen alleges that under the RSM Contracts, Defendants agreed to the following provisions:

---

[1] All parties agree that all substantive disputes arising under the contracts must, as contractually mandated, be submitted to mediation and/or arbitration. ([Filing No. 1, at CM/ECF p. 5](#), ¶13).

> [T]he RSM will not, directly or indirectly, alone or in association with others, at any time while this contract is in force:…(b) Induce or attempt to induce any WoodmenLife member or certificate owner to surrender, cancel, lapse, forfeit, or otherwise terminate any WoodmenLife insurance certificates or annuity certificates[.]
>
> [D]ue to the position of trust and confidence in which the RSM is placed as WoodmenLife's principal contact with the members and certificate owners with whom the RSM has contact, that for a period of two (2) years following termination of this contract, the RSM will not, directly or indirectly, alone or as an employee or contractor of any other organization, (i) induce or attempt to induce any WoodmenLife member or certificate owner with whom the WoodmenLife Representative did business and had personal contact during the term of this contract, to surrender, cancel, lapse, forfeit, or otherwise terminate any WoodmenLife insurance certificates or annuity certificates (ii) provide or offer to provide any insurance product which is competitive to Insurance products offered by WoodmenLife, to any member or certificate owner with whom the RSM did business and had personal contact during the term of this contract, or (iii) induce or attempt to induce any WoodmenLife employee or sales representative with whom the RSM actually worked and had personal contact while employed by WoodmenLife, to terminate their relationship with WoodmenLife, except to the extent such inducement or solicitation is for an enterprise that is not competitive with the business, products or services RSM offered or provided on behalf of WoodmenLife and cannot adversely affect WoodmenLife's relationship or volume of business. The parties agree that the covenants contained in this paragraph are fair and reasonable in light of all of the facts and circumstances of the relationship between the RSM and WoodmenLife[.]

[Filing No. 1-2, at CM/ECF pp. 4-5](#), ¶ 8.

Plaintiff alleges that upon termination of their employment with Woodmen, Defendants "instantly began violating their RSM Contracts by soliciting and inducing Plaintiff's members, certificate holders, representatives, and employees to sever their relationships with Plaintiff and begin doing business with Defendants." ([Filing No. 46, at CM/ECF p. 1](#)). Plaintiff seeks a

court order enjoining Defendants from continuing their alleged breach of the RSM Contracts. ([Filing No. 1](#)).

"To determine to what extent Defendants have breached their RSM Contracts and harmed Plaintiff, Plaintiff seeks certain information and documents from closely related third-parties who Defendants now work on behalf of; namely, First Heartland." ([Filing No. 46, at CM/ECF p. 1](#)). On October 17, 2018, Woodmen served Notice upon Defendants it intended to serve a subpoena upon First Heartland, requesting it to produce:

> [The] complete and entire personnel, contract, and commissions file for John B. Ligon, Scottie D. Clark, Robert Clark, John M. "Mike" Ellis, George W. "Dinky" Crowder, and Leslie R. "Les" Miles, as well as any payroll records, payment records, commission statements (including the names of each individual to whom the foregoing individuals provided services or sold products on behalf of any First Heartland Capital, Inc., entity and the product sold), communications with any former WoodmenLife customers (including, but not limited to, documents referring to the solicitation, quotation of policy prices, and placement of insurance with any First Heartland Capital, Inc., entity, affiliate, or subsidiary); and all communications regarding any of the foregoing individuals' WoodmenLife Advantage Contract and/or its restrictive covenants.

([Filing No. 31, at CM/ECF p. 1](#)).

On October 24, 2018, both Defendants objected to the issuance of the subpoena as to First Heartland.[2] Although the proposed subpoena seeks information

---

[2] On November 7, 2018, Plaintiff sent a "meet and confer" letter to Defendants, pursuant to NeCivR 7.1. Counsel for Clark responded to Plaintiff's letter on November 29, 2018. Counsel for Ligon did not respond. On December 19, 2018, the parties participated in a telephone conference with the undersigned magistrate judge to discuss Defendant's objections to the issuance of the First Heartland subpoena, however Defendants' objections remained unresolved following that call.

regarding several individuals, both Defendants object only to the extent the subpoena seeks information about each respective Defendant himself. (Filing No. 46, at CM/ECF pp. 8, 16.)

ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015. The scope of permissible discovery under Rule 26 is broad and parties may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts should examine each case individually to determine the weight and importance of the proportionality factors. "'[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34' and is subject to the rules that apply to other methods of discovery." Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc., 237 F.R.D. 215, 217 (D. Neb. 2006).

The burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court. Elizabeth D. Laporte & Jonathan M. Redgrave, A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26, 9 Fed. Ct. Rev. 20, 40 (2015). A party requesting discovery must show how the requested information is important to the issues and resolution of the case: The responding party must show the expense and burden of

responding. Id. The court can then balance the parties' interests and order discovery consistent with the proportionality mandated under the federal rules.

The disputed discovery sought by Woodmen through the instant motion concerns (1) Defendants' payroll records, payment records, and commission statements with First Heartland; (2) communications with former Woodmen customers;[3] and, (3) all communications regarding Defendants' WoodmenLife Advantage Contract and/or its restrictive covenants. (Filing No. 46, at CM/ECF p. 2). Woodmen claims this information is relevant because it goes to the heart of the issue of whether Defendants have breached their RSM Contracts by soliciting and inducing Plaintiff's members, certificate holders, and employees to sever their relationships with Plaintiff and to do business with Defendants, thereby harming Plaintiff's legitimate business interests. (Filing No. 46, at CM/ECF p. 5). Woodmen argues that:

> [f]or example, Defendants' commission statements will show the names of Plaintiff's former members and certificate holders who switched their business from Plaintiff to Defendants and, just as importantly, how much Defendants have profited off of their unlawful conduct.

(Filing No. 46, at CM/ECF p. 6).

Defendants argue the proposed subpoena exceeds the scope of discovery under Rule 26. (Filing No. 47, at CM/ECF p. 3; Filing No. 48, at CM/ECF p. 2). Defendants state that Woodmen and one of its affiliates have filed the following three actions against Defendants:

1. The current action.

2. An arbitration action solely seeking damages for the alleged breach of the same contract before the American Arbitration Association ("AAA").

---

[3] "including, but not limited to, documents referring to the solicitation, quotation of policy prices, and placement of insurance with any First Heartland Capital, Inc., entity, affiliate, or subsidiary . . . ).

3. An arbitration proceeding seeking both injunctive relief and damages before the Financial Industry Regulatory Authority ("FINRA"), for Defendants' alleged breach of a separate contract regarding the sale of financial products to former Woodmen clients.

(Filing No. 47, at CM/ECF pp. 1-2; Filing No. 48, at CM/ECF p. 2, n. 2). Defendants therefore claim making certain portions of the requested discovery is duplicative and disproportionate.

Financial Products.

As a preliminary matter, Defendants argue that because the current action solely involves insurance products and the only relief sought is injunctive relief to enforce certain covenants, the scope of the subpoena, which would extend to financial products, is too broad. (Filing No. 47, at CM/ECF p. 3; Filing No. 48, at CM/ECF p. 2). Defendants contend that any information about financial products is beyond the scope of discovery in the instant matter, and more appropriately sought in the FINRA proceeding. (Filing No. 47, at CM/ECF p. 3).

Plaintiff argues that, "Defendants attempt to improperly narrow and cloud the issues by asserting a distinction without merit in terms of 'insurance products' versus 'financial products.'" (Filing No. 49, at CM/ECF p. 4). "At the least," Plaintiff argues, "any interpretation involves a question of law and contract interpretability and is inappropriate at the discovery stage." (Filing No. 49, at CM/ECF p. 4).

Upon review of the record, the court finds the plain language of the RSM contracts and Plaintiff's complaint unambiguously extends to only an "insurance product [or annuity certificate] which is competitive to Insurance products offered by WoodmenLife." (Filing No. 1, at CM/ECF p. 3, ¶ 8). Therefore, Plaintiff must limit the scope of the subpoena to only those products covered by the RSM contracts, including: (1) insurance products; and (2) annuity certificates.

Defendants' payroll records, payment records, and commission statements.

Defendants further argue that Plaintiff's request for payroll and payment records and commission statements may be relevant to Woodmen's claim for damages (pending before the AAA), but it extends far beyond the issue of injunctive relief pending in this forum. ([Filing No. 47, at CM/ECF p. 4](Filing No. 47, at CM/ECF p. 4)). Plaintiff argues such documents are relevant "because they will show which members, certificate owners, and customers Defendants improperly solicited and/or provided competitive products to in violation of their restrictive covenants." ([Filing No. 49, at CM/ECF p. 3](Filing No. 49, at CM/ECF p. 3)).

Although Plaintiff has made some threshold showing that the above records are relevant to its claim, it fails to demonstrate its request is proportional to the needs of the case. Namely, Plaintiff fails to demonstrate its need to obtain a list of <u>all</u> Defendants' First Heartland clients. The identity and private and confidential documents of Defendants' clients who were never customers of Woodmen is wholly irrelevant to the non-compete contract at issue, and it will shed no light on whether Woodmen is entitled to the requested injunction. The court further finds that Defendants' payment and payroll records and commission statements are disproportionate to the needs of the instant case. Rather, this information goes to the issue of damages, and is therefore relevant, if at all, in the action pending before the AAA.[4]

---

[4] Based on the language of the non-compete provision at issue, only those customers appearing on both Woodmen's customer list and Defendants' First Heartland customer lists for the two years following Defendants' departure from Woodmen are relevant to the issues raised in this case. That is, if a customer is on Defendants' lists from First Heartland, but that customer was not a Woodmen customer while Defendants worked for Woodmen, I do not see how that customer's identity, contact, or insurance information is relevant to proving Defendants solicited Woodmen customers in violation of the non-compete provisions at issue.

As suggested by the court during the pre-motion conference call, perhaps the best course of action is for the lawyers (perhaps subject to an "Attorneys Eyes Only" protective order) to compare Woodmen's customer list with Defendants' customer lists, and thereafter

Accordingly, Plaintiff will be permitted to issue its Subpoena Duces Tecum upon First Heartland, but the subpoena must first be narrowed to those individuals who were Woodmen customers during the time Defendants worked with Woodmen. Once those persons are identified, the subpoena can demand that FirstHeartland produce documentation of any solicitation communications between Defendants and the identified former Woodmenlife customers and the placement of insurance for these customers with any First Heartland entity, affiliate, or subsidiary.[5]

Personnel files and First Heartland contracts.

Defendants further argue that to the extent the proposed subpoena would require production of their personnel files and contracts with First Heartland, the subpoena is overbroad because Defendants' independent agent relationship with First Heartland bears no relevance on the issue of whether Defendants violated their contracts with Woodmen. (Filing No. 46, at CM/ECF p. 17, ¶ 5; Filing No. 47, at CM/ECF p. 4).

Plaintiff, on the other hand, contends such documents are relevant "because they will show which former employee(s) were recruited by which Defendant to leave

---

limit discovery to those customers, if any, appearing on both lists. While this course of action may be dependent on the cooperation of First Heartland, a third-party, First Heartland would also likely benefit from this streamlined process.

[5] Of further note, Mississippi law, which governs Defendants' sale of insurance in Mississippi, requires that an insurance company send notice to another insurance company when it replaces a clients' life insurance policy. See, Mississippi Insurance Dept. Regulation Part 2, Chap. 14, Rule 14.05. As such, and as evidenced in Plaintiffs' complaint, Woodmen already has at least some access to this relevant information. (See, Filing No. 1, at CM/ECF p. 12, ¶¶18-32).

their job with Plaintiff and begin working for Defendants", arguing these documents may disclose which Defendant supervisions or earns override commissions from which former Woodmen employee, when those relationships began, and when these former Woodmen employees began working for First Heartland. ([Filing No. 49, at CM/ECF p. 3](#)). In sum, Plaintiff argues, "this information goes to the very heart of the issues set forth in Plaintiff's Complaint, including Defendants' breach of the restrictive covenant prohibiting Defendants from recruiting Plaintiff's representatives and employees to leave their employment with Plaintiff." (Id.)

The court agrees. Defendants' personnel files and contracts with First Heartland may contain information directly relevant to whether Defendants breached their RSM contracts. For example, these documents may show whether Defendants solicited Plaintiff's members, holders, and/or employees to sever their relationship with Plaintiff and start doing business with Defendants, in violation of the RSM contract. Based on the information currently before the court, producing these documents will not impose undue burden or expense on First Heartland. Therefore, Plaintiff's request to issue its Subpoena Duces Tecum upon First Heartland as to Defendants' personnel files and contracts will be granted.

<u>Communications regarding Defendants' WoodmenLife Advantage Contract and/or its restrictive covenants.</u>

Defendants have raised no objection to Plaintiff's notice of intent to subpoena documentation of all communications regarding Defendants' WoodmenLife Advantage Contract and/or its restrictive covenants. The proposed subpoena may be served as to such communications.

IT IS ORDERED

1) Plaintiff's motion to overrule Defendants' objections and permit issuance of a subpoena duces tecum on First Heartland, ([Filing No. 46](#)), is granted in part and denied in part as outlined herein.

2)     Plaintiff is permitted to serve the subpoena on First Heartland, provided it is first narrowed in accordance with this order.

Dated this 13th day of February, 2019.

                                            BY THE COURT:

                                            *s/ Cheryl R. Zwart*
                                            United States Magistrate Judge